**BRYAN POWER CO. v. CITY OF BRYAN.***
(No. 8369.)

(Court of Civil Appeals of Texas. Galveston. Oct. 30, 1923. Rehearing Denied Dec. 6, 1923.)

1. **Appeal and error** ⬉⇒553(1)—**Assignments of error in exception to ruling on motion for new trial with notice of appeal held sufficient without bill of exceptions.**

Where appellant duly excepted, with notice of appeal, to the ruling on its motion for a new trial, assignments of error therein made were sufficient without a bill of exceptions.

2. **Waters and water courses** ⬉⇒203(15)—**Evidence held to show price of plant purchased by city covered claims for service.**

In an action by a power company, which had sold its water, light, and power plant to a city, for extra claims for services, etc., evidence *held* sufficient to warrant finding that the contract price for the plant covered all such items.

3. **New trial** ⬉⇒50—**Refusal of new trial for failure to produce documentary evidence in jury room held not an abuse of discretion.**

The court's refusal to grant a new trial for alleged impropriety in the jury room, in that jurors were not permitted to examine documents which had been admitted in evidence, *held* not an abuse of discretion.

4. **Appeal and error** ⬉⇒926(2) — **Conflicting testimony as to making demand for production of letters at trial resolved against making of demand.**

Where testimony was sharply conflicting as to whether appellant at the trial had demanded the production of letters material to the controversy, it must be assumed, on appeal, that the conflict was resolved against the making of the demand.

Appeal from District Court, Brazos County; W. C. Davis, Judge.

Action by the Bryan Power Company against the City of Bryan. Judgment for defendant, and plaintiff appeals. Affirmed.

J. L. Darrouzet and Leo C. Brady, both of Galveston, for appellant.

Henderson & Ranson, of Bryan, for appellee.

GRAVES, J. By a written contract between them, of date July 28, 1919, appellant, power company, a private corporation, and appellee, city of Bryan, a municipal corporation, agreed that the city would purchase the power company's water, light, and power plant then serving the city, and the land on which it was situated, for a consideration of $70,000 in serial bonds of the municipality, a bond election for August 28, 1919, to determine whether the people would vote the bonds for the purpose being specially provided for; the election was duly held, the bonds were voted and issued, and on November 19, 1919, the transaction was completed by the power company's deeding and delivering the property to the city and receiving the consideration, as so contracted.

Thereafter the power company sued the city in this proceeding, declaring upon three items of alleged indebtedness, amounting, respectively, to $5,495, $8,904, and $1,100, the cause of action upon which, in the same order as given, is thus stated in appellant's brief filed in this court:

"The first item is for direct pressure furnished the city. The original contract between the parties provided that until the city could

furnish a 140-foot high water tower for gravity pressure, the 100-foot high tower then owned by the city would be kept in service by the city and filled with a 100-foot pump. The plaintiff was to and did furnish this pump of 150,000 gallons for 24 hours, operating 100-foot head for filling the 100-foot high tower.

"In 1913 this tower was destroyed, and the plaintiff alleged that defendant made an agreement with the plaintiff to keep his engine running constantly, and thus furnish by centrifugal pumps pressure directly into the water mains. During the earlier stages of furnishing this direct pressure, plaintiff accepted $40 a month under a written agreement with defendant, but, finding this insufficient, refused further to accept the amount, upon the termination of the written agreement, as full settlement, and thereafter demanded of the city each month an increase in pay to cover the increased cost of furnishing this direct pressure. The city refused to pay an increase, and through its manager, Greer, finally, on refusal of plaintiff to accept $40 per month as full payment, withheld any and all payments for this direct service.

"The second item in plaintiff's suit was based on the fact that the city had contracted to meter the water furnished by plaintiff, and plaintiff was to be paid for water furnished as shown by the meter, and that the city did not furnish such meter, but used a small and insufficient capacity meter belonging to plaintiff; one purchased by plaintiff for the mere purpose of rough check for plaintiff's own private purposes in order that an approximate estimate might be had of amount of electric power used, and to check against the meter which the city would install. Plaintiff alleged that this meter would register much more accurately under full steady flow of water into a standpipe than under the direct pressure system, and the amount of water which flowed through the meter without being measured or recorded under the direct pressure system makes up this second item.

"The third item was the recovery of approximately $1,100 withheld by the city of Bryan from the Bryan Power Company, said city claiming to be authorized, to withhold same by a clause in the original contract between the city and the power company. The power company was furnishing water to the municipal corporation under contract, which contract provided, among other things, that after 1917 the company should rebate to the city a portion of its profits, if same exceeded 15 per cent. The city contended that this 15 per cent. should be computed upon the cost of operation rather than upon invested capital or capital stock, and withheld the sum.

"After the execution of the alleged contract of release of July 28, 1919, plaintiff continued to furnish service until November 19, 1919, when the plant was sold to the city."

The city answered these demands with a general demurrer, special exceptions, denials, extended pleas to the effect that all these matters complained of had been merged into and settled by the contract of July 28, 1919, and the deed of November 19, 1919, carrying out the same, both of which were set up in bar, and with detailed assertions that appellant was estopped to make such claims by reason of the provisions of the contract and consequent deed referred to, as well as under prior contracts of January, 1911, and May, 1913, and relations thereunder between the parties; the particular stipulation of the contract of July 28, 1919, which contract it was averred formed a part of and was fully carried out in all respects by the succeeding deed of November 19, under mutual and express understanding between the parties that the $70,000 consideration would include all such claims as those herein sued for, was as follows:

"It is expressly understood that if the bond issue to carry out this agreement is voted by the citizens of Bryan that in the deed transferring the property to the city a contract forever barring the Bryan Power Company, its agents or assigns, or the Lawlers jointly and severally, from suing the city of Bryan for any claim for damages, failure to perform contract, amounts due, or alleged to be due and unpaid, or choses in action of any kind or description which it or they may have previous to the signing of this agreement."

By a supplemental petition appellant attacked the July 28, 1919, contract as having been meaningless, without consideration, neither carried into the deed, nor intended as a bar, against public policy, and as having been induced by fraud and duress, adding that in consequence the alleged deed following it in November was invalid; in turn this new matter was replied to by denials on the city's part, and by reiteration in final effect of what it had already presented.

The court submitted the cause to a jury in a charge, which, in addition to outlining the issues as made by the pleadings and defining the effect of reducing agreements to writing, duress, consideration, burden of proof, and the applicable measure of damages, propounded to them these questions:

"(5) You are instructed that, if you believe from the evidence that the plaintiff, the Bryan Power Company, made and entered into a contract with the defendant, the city of Bryan, whereby it agreed by direct pressure to pump and force water from the city wells directly into the mains of the city of Bryan, and you further believe that the city of Bryan agreed and promised to pay to the said Bryan Power Company for such services, and you further believe that the said city of Bryan has failed and refused to pay the said plaintiff for the services rendered, if any, as agreed upon, you will find for the plaintiff on this item of damages; and you are further instructed that, if you believe that the plaintiff, the Bryan Power Company, by reason of a defective or slow meter, furnished to the city of Bryan an amount of water in excess of that for which said plaintiff has received compensation, according to the terms and agreement entered into by and between the plaintiff and defendant, and you further believe that the said defendant failed and refused to pay to the

plaintiff for such excess water so furnished, if any, and if you so believe, you will find for the plaintiff as to this item of damages; and you are further instructed that, if you believe that the defendant withheld from the plaintiff a certain amount of money alleged by said plaintiff to be due as a rebate on the profits of said power company, and you believe from the evidence that the said defendant unlawfully and illegally withheld said money, you will find for the defendant as to this item of damages.

"(7) You are instructed that, if you believe from the evidence that the plaintiff, the Bryan Power Company, acting by and through its vice president and general manager, made and entered into a contract and agreement with the defendant, the city of Bryan, by a certain instrument dated July 28, 1919, wherein the said plaintiff agreed to sell to the defendant its entire plant and lands on which same were situated, and all supplies and equipment connected therewith, in the sum of $70,000, and you further believe that the said plaintiff, acting by and through its said vice president and general manager, Jordan T. Lawler, without any compulsion or duress, as that term has been herein defined, made, signed, and executed an agreement wherein and whereby the said plaintiff, according to the terms of said agreement, agreed to cancel all indebtedness due them by the defendant, the city of Bryan, and you believe that at the time of the execution of such agreement it was the intention of the parties executing same for and in consideration of the sale of said light and water plant to the said city of Bryan that all outstanding obligations, claims, and demands against the said city of Bryan should be canceled, and you believe that the said Jordan T. Lawler, acting for and on behalf of the plaintiff, the Bryan Power Company, signed and executed such instrument without compulsion or duress, then you will find for the defendant.

"I instruct you that, if you believe from the evidence that the Bryan Power Company, by Jordan T. Lawler as vice president and general manager, accepted the sum of $70,000 in bonds from the city of Bryan in payment for the plant and for all claims and demands due by the city to the power company, if any, you will find for defendant."

A general verdict in favor of the city was followed by judgment accordingly, and the power company appeals.

[1] There is not a bill of exceptions in the record, but appellant filed a motion for a new trial below, to the overruling of which it duly excepted with notice of appeal, and we think the assignments of error therein made are sufficient to raise the questions herein treated as being involved upon the appeal.

[2] It is first contended that—

"The verdict of the jury and judgment of the court is contrary to the law and evidence, in that the undisputed evidence shows that the damages were suffered by plaintiff as sued for, and the water was furnished in excess of the registered amount and excess of the amount paid for, and direct pressure into the main was furnished which was not paid for, and that of said pressure and water an amount was furnished after July 28, 1919, in the sum of $1,825.60, and that no payment of same was ever made nor any release ever given of said claim; nor was any such payment or release claimed or pleaded or attempted to be proved by defendant."

After carefully examining the statement of facts, we cannot hold that the undisputed evidence in any particular is as here asserted; upon the contrary, there is ample support for the jury's finding as to each and all of the several items thus specified. Since no complaint is made either as to the submission of the issues or of the court's charge in other respects, nor any as to the admission or rejection of testimony, this finding adversely disposes of appellant's claim that any indebtedness was shown to be due it.

The evidence covered the entire course of the dealings between the parties concerning the plant, inclusive of their culmination in its final sale to the city, and is voluminous; no useful purpose would be subserved by at length reviewing it here, but we think, notwithstanding conflicts in the testimony, that the evidence was amply sufficient to support findings that the $70,000 consideration for the sale of the plant to the city covered and included, not only all the claims accruing up to the signing of the contract of sale of July 28, 1919, but as well the $1,800 one charged to be due for water and service furnished between that date and the delivery of the property under the deed of November 19, 1919. The verdict of the jury, to whom the whole controversy was submitted under the quoted inquiries, must be construed as embodying such fact determinations.

It is true the verbiage of that paragraph of the contract of sale barring the assertion of any claim against the city, which has been above copied, and in which occurs an omission evidently clerical and not affecting its meaning, might at first blush indicate that the barred claims were to be limited to those existing prior to the signing of the agreement, but the evidence as a whole clearly justified the jury, we think, in concluding that such was neither its real purport nor the understanding of the parties to it.

A bond election to provide the agreed purchase price, which it was understood would necessarily take 30 days time, and then a subsequent deed to and delivery of the property were expressly contemplated and therein provided for; when this deed was thereafter made by appellant and turned over to the city in consideration of the $70,000 in bonds then paid, it not only carried as part and parcel of it this contract of sale in full, but also the proceedings of the city commission thereon, inclusive of the report of a committee it had before appointed, reciting negotiations had for the sale with appellant's representative Mr. Lawler; these documents tend to bear out this testimony concerning

the transaction of Mr. Greer, the manager for the city, who acted for it in the matter:

"I stated to Mr. Lawler that we wanted the transaction as finally made to embrace everything, every kind of claim he had against the city of whatever nature; that we didn't want any hereafter to it; that *upon final settlement when we turned the money over and got the deed for the plant it was to wipe out everything from the beginning to end.* That was my instructions from the city commission. I *wrote that contract,* and know what is in there was agreed on. I wrote that contract in my office before the city commission acted upon it, and before I went down to see Miss Lawler and had a talk with her. Mr. Lawler came up and reviewed it with me in my office before any of them saw it except himself. As to whether I prepared it the night the trade was consummated, I couldn't have written the contract in three or four hours to save my life. The night we had the meeting .we agreed on the contract. Mr. Lawrence was the mayor when they got ready to consummate the trade finally—after they had gone over all of these preliminaries—asked the question distinctly and emphatically, 'Does this include everything in connection with the city business?' and I told him that was the intention of it. Yes, Mr. Lawler was there. Mr. Lawler did not say anything right at that time."

The underscoring is our own. All the city officials who were witnesses on the trial testified to a like understanding of the agreement and to the same action thereunder. The assignment must be overruled.

[3] The next assignment, as we understand its purport, although it does not so recite, is a complaint at the refusal of the court to grant appellant's motion for a new trial on account of certain asserted improprieties in the jury room, including alleged misconduct in several particulars on the part of some members of the jury in arriving at their verdict.

These matters were all threshed out in much detail by the trial court upon a hearing had upon the motion, and a complete transcript of the evidence heard thereon is before us. However, the only impropriety or misconduct attempted to be pointed out in appellant's statement under these propositions is that, during the jury's deliberations, one member asked for some bills Mr. Lawler had submitted to the city for monthly amounts, which had been introduced in evidence, and they were not in the jury room; consequently he was not permitted to see them. In reference to this, the foreman of the jury testified on the hearing upon the motion that no one asked for any bills, but the jury wanted and phoned the court for the contract of July 28, 1919, and "we got the copy in the, pleading, and were told it was the same thing." It does not appear who told them the copy attached to the pleading was the same thing. The court, in a certificate appended to the transcript ·of the evidence heard pursuant to the motion, states that he told the jury they could have any documentary evidence they wanted by calling on him; that while they were deliberating the officer telephoned him they wanted the contracts of July 28, 1919, and of 1911; that he told the officer they were in his desk, and did not know he had been unable to find them until the new trial hearing.

While this is all appellant's statement under this assignment presents, we have carefully examined this supplementary statement of facts, and conclude that no abuse of the trial court's discretion is shown. The assignment is accordingly overruled.

A further contention that some members of the jury misread the contract of July 28, 1919, in that they understood it to mean that the claim for water furnished subsequent to that date was to be released, when it had no such effect, has been answered by preceding conclusions. If, as before indicated, that construction as to the· real agreement between the parties was permissible, as we think from the evidence as a whole it clearly was, there was no misapprehension either of fact or legal effect.

[4] The concluding complaint is that the defendant below after due demand, concealed and refused to produce in court certain letters material to the controversy. A sufficient answer to this is that there was a decided conflict in the testimony as to whether any such demand was made during the trial for such documents; the attorney for defendant city testified that he had them in court at the time, and would have been glad to furnish them, if request had been made. In this court it must be assumed that the conflict was resolved against the making of the demand.

Upon the whole case we conclude that no reversible error has been shown, and that the judgment of the court below must be affirmed. That order has been entered.

Affirmed.